UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/20
```

Allstar Marketing Group, LLC,

　　　　　　　　Plaintiff,

　　　　–v–

Bigbigdream320, *et al.*,

　　　　　　　　Defendants.

19-cv-3182 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Plaintiff's motion for the entry of default judgment. For the following reasons, the Court GRANTS Plaintiff's motion as to its federal and one of its state claims, enters a permanent injunction, and awards Plaintiff statutory damages. The Court also grants Plaintiff relief under N.Y. C.P.L.R § 5222 and dissolves the automatic stay imposed by Rule 62 of the Federal Rules of Civil Procedure to allow for immediate enforcement of the judgment. The Court declines to enter an asset transfer order.

## I.　　PROCEDURAL BACKGROUND

On April 10, 2019, Plaintiff filed its Complaint along with an *ex parte* Application for (1) a temporary restraining order; (2) an Order to Show Cause why a preliminary injunction should not issue; (3) an asset restraining order; (4) an order authorizing bifurcated and alternative service; and (5) an order authorizing expedited discovery. *See* Dkt. Nos. 7, 14–18. That same day, the Court entered the TRO, set an order to show cause hearing, restrained Defendants' assets, and authorized alternative and bifurcated service and expedited discovery. Dkt. No. 20. On April 17, 2019, Plaintiff served copies of the TRO, Summons, Complaint, and all papers filed therewith on Defendants. Dkt. No. 35 ¶ 14, Ex. C. On April 24, 2019, the Court held an order to

show cause hearing.  *See* Dkt. No. 19.  No Defendants appeared, and the Court entered a

preliminary injunction order against all Defendants mirroring the terms of the TRO.  *See* Dkt.

No. 35 ¶¶ 16–17; Dkt. No. 6.  Plaintiff served Defendants with the PI Order on April 25, 2019.

Dkt. No. 35 ¶ 18; Dkt. No. 23.

All Defendants were required to answer or otherwise respond to the Complaint by May 8,

2019.  Dkt. No. 21.  On October 25, 2019, Plaintiff requested Clerks' Certificates of Default

against defaulting Defendants, which it received from the Clerk of Court the same day.  Dkt.

Nos. 30–32; Dkt. No. 35, Ex. D.

On November 1, 2019, Plaintiff filed its motion for default judgment against the

Defendants it represents had not formally appeared or responded to the Complaint as of that

date.[1]  Dkt. No. 33.  In accordance with Rule 3.L of the Court's Individual Practices in Civil

Cases, the motion for default judgment and supporting paperwork were also served on the

defaulting Defendants, and an affidavit of service was filed on the public docket.  Dkt. No. 37.

## II.     FACTUAL BACKGROUND

Plaintiff Allstar Marketing Group, LLC is a leading developer, producer, marketer, and

distributor of quality, innovative consumer products including MagicBax Products, earring backs

that keep earrings in a perfect position all day long.  Compl. ¶¶ 7–8.  It has obtained federal

copyright and trademark registrations in and relating to MagicBax Products.  Compl. ¶¶ 11–15.

In this action, it alleges counterfeiting and infringement of Allstar's federally registered

trademarks in violation of the Lanham Act, 15 U.S.C. §§ 1114(1)(a)–(b), Compl. ¶¶ 47–69; false

designation of origin, passing off and unfair competition in violation of the Lanham Act, 15

---

[1] These Defendants are identified on page v of Plaintiff's Memorandum of Law as: bigbigdream320, bluesky_666, buyeasy-au, case-charger, cicikala, deriog18, gwqigtbweg, hdjkhdjk1, hdjsin1123, jewelry-wholesaler, junxuan1089, koewnghherh, love_wholesale, magcraftstone, mallcolour, ssmin_online, sweetsilverhut, united_innovation, wonggg, yuehengtechnology, yugum, zhuoma86 and zixuanjun201602.  Dkt. No. 34 at v.

U.S.C. § 1125(a), Compl. ¶¶ 70–78; copyright infringement of federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*, Compl. ¶¶ 79–86; and related common law claims, Compl. ¶¶ 87–96.

Plaintiff alleges that the defaulting Defendants are merchants on the eBay.com "marketplace and e-commerce platform," through which they "advertise, distribute, offer for sale and/or sell . . . their retail products . . . to consumers worldwide and specifically to those residing in the U.S., including New York." Compl. ¶ 23. Plaintiff claims that the defaulting Defendants have used their user accounts and merchant storefronts, without authorization, to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, and sell counterfeit products to "U.S. consumers, including those located in the state of New York." Compl. ¶¶ 33–34.

Plaintiff represents that it retained an intellectual property infringement research services firm to investigate merchants selling infringing and counterfeit products on the eBay platform, and that the firm "specified a shipping address located at [a] New York Address and verified that each Defendant provides shipping to the New York Address." Compl. ¶ 36. It alleges that "each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York." Compl. ¶ 37.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop,*

*LLC*, 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a).  The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings.  *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 54(c).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded.  *See Mickalis Pawn Shop*, 645 F.3d at 137.  Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014).  But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor.  *Belizare*, 61 F. Supp. 3d at 344.

## IV.    DISCUSSION

Turning to the present case, the Court first examines whether Plaintiff's claims meet the standard for default judgment and then addresses appropriate remedies.  As an initial matter, the Court notes the existence of threshold questions of whether it has personal jurisdiction over the defaulting Defendants and whether joinder of them herein is appropriate.  For substantially the same reasons articulated in its Opinion and Order in *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 WL 1375470 (S.D.N.Y. Mar. 27, 2019), the Court answers both questions in the

4

affirmative.

### A.   Default Judgment on Plaintiff's Federal and One of its State Claims Is Warranted

In this action, Plaintiff alleges six causes of action arising out of defaulting Defendants'

alleged marketing and sale of counterfeit MagicBax Products.

### 1.   Default Judgment on Plaintiff's Counterfeiting, Infringement, and False Designation Claims Is Warranted

The first three counts of Plaintiff's Complaint allege trademark counterfeiting, trademark

infringement, and false designation claims in violation of the Lanham Act, 15 U.S.C.

§ 1114(1)(a) and (b) and § 1125(a).

The Lanham Act imposes liability on any person who in connection with the sale,

offering for sale, or distribution of a good either uses a counterfeit of a registered mark or

counterfeits such mark in advertising or packaging materials when such use or counterfeiting is

likely to cause confusion.  15 U.S.C. § 1114(1)(a)–(b).  It also bars as false designation the use in

commerce of any word, term, name, symbol, device, or combination thereof, which is likely to

cause confusion as to the origin, sponsorship, or approval of a person's goods with those of

another person or which misrepresents the nature, characteristics, qualities, or geographic origin

of another person's goods.  15 U.S.C. § 1125(a)(1)(A)–(B).

Despite differences in the statutory language, the same legal test applies to each claim

asserted here.  *Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003).  Courts ask

whether the allegedly infringed mark "is entitled to protection" and, if so, "whether use of the

allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of

the products to which it is attached."  *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d

155, 168 (2d Cir. 2016) (internal quotation marks omitted).  As to the first element, "[a]

certificate of registration with the Patent and Trademark Office is prima facie evidence that the

mark is registered and valid." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999).  As to the second, the standard for consumer confusion is easily satisfied in the case of counterfeits "because counterfeits, by their very nature, cause confusion." *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (internal quotation marks omitted).

Both elements are met in this case.  Plaintiff alleges that it possesses a certificate of trademark registration for "MAGICBAX" for a variety of goods and attaches the certificate to its Complaint.  Compl. ¶ 12, Ex. B.  And, taking the allegations in Plaintiff's Complaint as true, defaulting Defendants' products are each virtually identical to Plaintiff's MagicBax products and incorporate copies or colorable imitations of MagicBax marks, with only minor variations that no ordinary consumer would recognize.  *E.g.*, Compl. ¶¶ 35, 38–40, 52.  These allegations are sufficient to support the conclusion that the marks deployed by defaulting Defendants are counterfeits: the average purchaser would find the allegedly counterfeit mark to be substantially similar to the registered mark as it appears on the actual merchandise.  *See, e.g.*, *Montres Rolex, S.A. v. Snyder*, 718 F.2d 524, 531–32 (2d Cir. 1983); *Coach*, 908 F. Supp. at 434.  On this basis, the Court finds that default judgment on Plaintiff's first three causes of action is warranted.

## 2.       Default Judgment on Plaintiff's Copyright Infringement Claim Is Warranted

To prevail on a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) infringement of that copyright by the defendant.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 360 (1991).  There is a statutory presumption that registered copyrights are valid.  *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001).  To establish infringement, the copyright owner must demonstrate (1) that the defendant has actually copied the owner's work and (2) that the copying is illegal because a substantial

similarity exists between the defendant's work and the protectable elements of the owner's work. *Id.* at 110.  Actual copying may be shown by indirect evidence; "[i]f the two works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved without a showing of access."  *Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995) (internal quotation marks omitted).  Substantial similarity, in turn, hinges on "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work."  *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir. 1999).

Both elements are met in this case.  Plaintiff alleges that it is the owner of U.S. Copyright Registration numbers covering the MagicBax retail packaging, instruction manual, website, and commercial and attaches its registration certificates to its Complaint.  Compl. ¶ 15, Ex. C.  These allegations suffice to establish the statutory presumption of validity and are not contradicted by any other allegations or arguments before the Court.  For the same reasons that the allegations in Plaintiff's Complaint establish that the products at issue are counterfeits, Plaintiff has carried its burden of showing actual copying and substantial similarity.  Plaintiff's allegations establish that both the products and the packaging are so strikingly similar as to prove that defaulting Defendants had access to their products and created works that were substantially similar to Plaintiff's works.  *See* Compl. ¶¶ 38–40, Ex. D.  As above, the average lay observer would recognize defaulting Defendants' alleged copies as being appropriated from Plaintiff's work. *See* Compl. Ex. D.

### 3.   Default Judgment on Plaintiff's Common Law Claims is Warranted in Part

Finally, Plaintiff alleges unfair competition and unjust enrichment in violation of New York common law.

To state a claim for unfair competition under New York common law, a plaintiff must

allege (1) bad faith (2) misappropriation of the labors and expenditures of another that is

(3) likely to cause confusion. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27,

34–35 (2d Cir. 1995).  Alleging a likelihood of confusion is sufficient to state a claim for

injunctive relief, while to state a claim for damages, a plaintiff must allege actual confusion.  *Id.*

A plaintiff has carried this burden when it states a Lanham Act claim coupled with a showing of

bad faith or intent, *see Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d

137, 157 (E.D.N.Y. 2016), and "[u]se of a counterfeit mark creates a presumption of bad faith,"

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599

(S.D.N.Y. 2010) (Sand, J.).  Because Plaintiff has made out a Lanham Act claim for use of a

counterfeit trademark, these elements are easily met in this action.

Finally, the elements of unjust enrichment under New York law are "(1) defendant was

enriched; (2) at plaintiff's expense; and (3) equity and good conscience militate against

permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch, Ltd. v. Phoenix

Pictures, Inc.*, 373 F.2d 296, 306 (2d Cir. 2004).  But unjust enrichment "is available only in

unusual situations when, though the defendant has not breached a contract nor committed a

recognized tort, circumstances create an equitable obligation running from the defendant to the

plaintiff. . . .  An unjust enrichment claim is not available where it simply duplicates, or replaces,

a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790

(2012).  Accordingly, courts in this circuit frequently dismiss unjust enrichment claims brought

in Lanham Act cases.  *See, e.g., Boost Worldwide, Inc. v. Talk Til U Drop Wireless, Inc.*, No. 14-

cv-86 (MAD), 2014 WL 5026777, at *2 n.2 (N.D.N.Y. Oct. 8, 2014); *Goldemberg v. Johnson &

Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 483–84 (S.D.N.Y. 2014).  The same result is

warranted here.

V.     **REMEDIES**

Having concluded that Plaintiff has established liability as to its Lanham Act, copyright, and unfair competition claims, the Court turns next to remedies.  Plaintiff seeks entry of a permanent injunction, heightened statutory damages, the post-judgment continuance of the pre-judgment asset restraint imposed on defaulting Defendants by the temporary restraining order and preliminary injunction previously entered in this matter, and an asset transfer order.

A.     **A Permanent Injunction Is Warranted**

The Court has authority to grant injunctive relief to prevent further violations of a plaintiff's trademarks and copyrights.  15 U.S.C. § 1116.  When, as here, a plaintiff has succeeded on the merits, a permanent injunction is appropriate if the plaintiff has demonstrated (1) that it suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that the balance of hardships between the parties warrants a remedy in equity for the plaintiff; and (4) that the public interest would not be disserved.  *eBay Inc. v. Merc Exchange, LLC*, 547 U.S. 388, 391 (2006); *Salinger v. Colting*, 607 F.3d 68, 77–78 (2d Cir. 2010) (extending the *eBay* standard to copyright actions); *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011) (extending the *eBay*/*Salinger* standard to trademark infringement actions), *aff'd*, 511 F. App'x 81 (2d Cir. 2013) (summary order).

All of these factors favor issuing the requested permanent injunction.  "Irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark . . . because loss of control over one's reputation is neither calculable nor precisely compensable.'"  *U.S. Polo Ass'n*, 800 F. Supp. 2d at 540 (citation and internal quotation marks omitted).  Plaintiff's allegations of loss of goodwill, which are admitted

by virtue of Defendants' default, suffice to make this showing.  Further, defaulting Defendants'

past conduct raises a likelihood that they will continue to infringe Plaintiff's intellectual property

rights if the preliminary injunction is lifted.  The risk of this continued activity establishes the

second element: a plaintiff has no adequate remedy at law if, absent an injunction, "the defendant

is likely to continue infringing" its intellectual property rights.  *Warner Bros. Entm't Inc. v. RDR*

*Books*, 575 F. Supp. 2d 513, 553 (S.D.N.Y. 2008).

    The balance of hardships similarly favors issuing the requested injunction, because "it is

axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing

product." *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 287 (2d Cir. 2012) (internal quotation marks

omitted).  Finally, "the public has an interest in not being deceived—in being assured that the

mark it associates with a product is not attached to goods of unknown origin and quality."

*N.Y.C. Triathlon, LLC v. Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

## B.    Statutory Damages Are Approved

    When the Court enters a default judgment, while it accepts as true all of the factual

allegations in the complaint, "the amount of the damages are not deemed true."  *Credit Lyonnais*

*Securities (USA) v. Alcantara*, 183 F.3d 151, 152 (2d Cir. 1999).  Instead the Court must

"conduct an inquiry to ascertain the amount of damages with reasonable certainty."  *Id.*  Here,

Plaintiff submits tiered requests for statutory damages based upon the currently known number

of sales of counterfeit products made by the defaulting Defendants.  Dkt. No. 34 at 12–14; *see*

*also* Dkt. No. 35-6.  Across tiers, Plaintiff requests heightened statutory damages under the

Lanham Act[2] based on its allegations that defaulting Defendants acted willfully.  The Court

---

[2] Plaintiff elects damages under the Lanham Act "without waiving its claims under the Copyright Act," Dkt. No. 34 at 10, and does not address its state law claims.  Although some courts have concluded that plaintiffs "are not entitled to duplicative recoveries for the same intellectual property theft under multiple theories of liability," *TU v. TAD Sys. Tech. Inc.*, No. 08-cv-3822 (SLT), 2009 WL 2905780, at *4 (E.D.N.Y. 2009); *see also InduCraft, Inc. v.*

approves Plaintiff's damages requests with the modifications described below.

The Lanham Act permits plaintiffs to elect statutory damages.  15 U.S.C. § 1117(c).  If the Court concludes that the use of the counterfeit mark was willful, Plaintiff may elect an award not less than $1,000 and not more than $2 million per counterfeit mark per type of good sold or offered for sale.  *Id.*  "Within these statutory limits courts have considerably broad discretion to balance the punitive, deterrent function of an award against the direction that it not constitute a windfall for prevailing plaintiffs."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 472 F. App'x 19, 22 (2d Cir. 2012) (summary order) (citation and internal quotation marks omitted).  Although the Lanham Act does not itself provide guidelines, courts in this district "have imported from copyright law a multifactor test" that looks to (1) the infringer's profits reaped and expenses saved; (2) the plaintiff's revenues lost; (3) the mark's value; (4) the need to deter potential infringers; (5) the degree of willfulness or the innocence of the defendant; (6) the defendant's cooperativeness in providing information relevant to proof of profits and losses; and (7) the need to deter the defendant from future misconduct.  *Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 425–26 & n.4 (S.D.N.Y. 2018) (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (articulating this standard in the Copyright Act context).

As an initial matter, Plaintiff is entitled to elect damages from the statutory range applicable to willful infringement.  Defaulting Defendants presumptively acted willfully because infringement is deemed willful "by virtue of [a] default."  *Tiffany (NJ) v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003).  Even in the absence of a default, courts in this District have concluded that use of marks that are "virtually identical" to the registered marks renders

---

*Bank of Baroda*, 47 F.3d 490, 497 (2d Cir. 1995) (articulating this theory at a higher level of generality), the Court need not address this question, as Plaintiff elects statutory damages under the Lanham Act only.

"inescapable" the conclusion that the defendant's infringement and counterfeiting was intentional. *Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 WL 4542971, at *5 (S.D.N.Y. Sept. 2, 2011), *report and recommendation adopted*, 2011 WL 4542717 (S.D.N.Y. Sept. 30, 2011); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995).

Turning next to the *Fitzgerald* factors, defaulting Defendants' failure to appear in this action prevents the Court from ascertaining their profits or the full extent of Plaintiff's losses, although as a general matter "[c]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range." *Spin Master*, 325 F. Supp. 3d at 426. Of those factors the Court can evaluate, Defendants' noncooperativeness (factor 6), the value of the mark (factor 3), the need to deter other possible infringers (factor 4), and the defaulting Defendants' willfulness (factor 5) favor a heightened award. On the other side of the balance, because the Court has approved a permanent injunction in this action, specific deterrence (factor 7) does not necessarily militate for a higher award. In analogous cases, armed with "little information as to the scope or consequences of a defendant's infringement," *Ermenegildo Zenga Corp. v. 56th St. Menswear, Inc.*, 06-cv-7827 (HB), 2008 WL 4449533 at *5–6 (S.D.N.Y. Oct.2, 2008), courts in this district have issued awards far below the statutory maximum, ranging in amounts from $25,000 to $50,000 for what are generally "small-scale counterfeiting operations" to up to $1 million when "there was reason to believe that the defendant's sales were substantial"—up to and including "millions of infringing goods," *Tiffany (NJ) LLC v. Dong*, No. 11-cv-2183 (GBD) (FM), 2013 WL 4046380, at *6 (S.D.N.Y. Aug. 9, 2013) (citing examples); *see also Burberry Ltd. v. Euro Moda, Inc.*, No. 08-cv-5781 (CM) (AJP), 2009 WL 4432678, at *5 (S.D.N.Y. Dec. 4, 2009) (similar).

Here, Plaintiff proposes a recovery structure that resembles the landscape of this case law, with statutory damages awards tiered roughly by the number of documented sales made by each defaulting Defendant.  The Court approves this tiered structure on the grounds that the tiers likely correspond to the otherwise unaccounted for factors of profit and expense.  However, the Court makes the following modifications:  Plaintiff is entitled to awards of $25,000 from each defaulting Defendant in the first tier with fewer than 10 sales of counterfeit products; $50,000 from each remaining defaulting Defendant in the first tier; $75,000 from each defaulting Defendant in the second tier; $125,000 from each defaulting Defendant in the third, fourth, fifth, and sixth tiers; and $250,000 from each defaulting Defendant in the seventh tier.  Post-judgment interest shall be awarded on these amounts pursuant to 28 U.S.C. § 1961.

### C.      Relief Under C.P.L.R. § 5222 is Granted

Plaintiff also requests that the Court continue the prejudgment asset restraint previously imposed on defaulting Defendants in the TRO and PI orders.  As an initial matter, Plaintiff notes that the post-judgment relief it seeks is available under New York C.P.L.R. § 5222[3], as incorporated through Rule 69 of the Federal Rules of Civil Procedure.  Dkt. No. 34 at 17–18. The Court agrees and grants Plaintiff this relief.  Accordingly, defaulting Defendants are forbidden to make or suffer any sale, assignment, transfer or interference with any property in which they have an interest, except as set forth in subsections (h) and (i) of Section 5222 of the C.P.L.R.

However, Plaintiff argues that a continuance of the prejudgment asset restraint is nonetheless necessary because Rule 62(a) of the Federal Rules of Civil Procedure stays the

---

[3] N.Y. C.P.L.R. § 5222 permits issuance of a restraining notice against a judgment debtor that prohibits disposition or transfer of property until the judgment is satisfied.

execution of and proceedings enforcing judgments for 30 days.[4]  Plaintiff asserts that, in light of this automatic stay and in the absence of an interim asset freeze, defaulting Defendants would have a 30-day window to conceal or dissipate their assets.

Plaintiff's concerns may be addressed by allowing for immediate enforcement of the judgment in this case, which Rule 62 explicitly grants this Court authority to order.  *See* Fed. R. Civ. P. 62, Advisory Committee's Notes (2018) ("Amended Rule 62(a) expressly recognizes the court's authority to dissolve the automatic stay . . . .  One reason for dissolving the automatic stay may be a risk that the judgment debtor's assets will be dissipated.").  Accordingly, the Court dissolves the automatic stay imposed by Rule 62 and allows for immediate enforcement of the judgment.

### D.    An Asset Transfer Order is Not Warranted

Finally, Plaintiff requests an asset transfer order under Rule 64 of the Federal Rules of Civil Procedure, the Lanham Act, and this Court's inherent equitable powers.  Dkt. No. 34 at 20–23.  However, it does not provide any authority for such relief beyond citing cases that granted similar transfer orders *without providing any legal reasoning*.  *See id.*  Because the Court is not aware of any *reasoned* authority providing for such relief, it adheres to its conclusion, as articulated in *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2020 WL 70489, at *2 (S.D.N.Y. Jan. 7, 2020), that the only post-judgment remedies available to Plaintiff are those under Rule 69 and state law.

In the alternative, Plaintiff seeks an asset transfer order under Rule 69 and state law, specifically pursuant to New York C.P.L.R. § 5225.  That statute provides:

Upon motion of the judgment creditor, upon notice to the judgment debtor, where

---

[4] In its briefing, Plaintiff cites to an earlier version of this rule, which provided for a 14-day stay.  *See* Dkt. No. 34 at 18–19.  However, the 2018 amendments to the Federal Rules of Civil Procedure extended the period of the automatic stay to 30 days.  *See* Fed. R. Civ. P. 62, Advisory Committee's Notes (2018).

it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

N.Y. C.P.L.R. § 5225(a).

This request for alternative relief is denied for two reasons. First, Plaintiff has not shown that it gave proper "notice to the judgment debtor" of a § 5225 motion, as required by the statute. N.Y. C.P.L.R. § 5225(a). Second, Plaintiff misunderstands the scope of § 5225. Orders issued under that statute are not to be directed towards a defendant's frozen assets generally, but rather to specific pieces of property. Plaintiff must show that "the judgment debtor is in possession or custody of money or other personal property in which he has an interest." *Id.* "[B]ecause Plaintiff[] ha[s] not identified the particular property as to which [it] seek[s] a turnover," its § 5225 motion "is denied without prejudice." *Bernard v. Lombardo*, Case No. 16-cv-863 (RMB), 2016 WL 7377240, at *3 (S.D.N.Y. Nov. 23, 2016).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for entry of default judgment is GRANTED as to defaulting Defendants' liability for (1) trademark counterfeiting under the Lanham Act; (2) trademark infringement under the Lanham Act; (3) false designation of origin, passing off, and unfair competition under the Lanham Act; (4) copyright infringement; and (5) common law unfair competition. Plaintiff's requests for a permanent injunction and statutory damages are also approved. The Court grants Plaintiff relief under N.Y. C.P.L.R § 5222 and dissolves the automatic stay imposed by Rule 62 to allow for immediate enforcement of the judgment. The Court declines to enter an asset transfer order.

The Court will enter a revised version of Plaintiff's proposed judgment by separate order.

The Clerk of Court is respectfully directed to close this case.  This resolves Dkt. No. 33.

      SO ORDERED.

Dated: September 30, 2020
       New York, New York

_____
          ALISON J. NATHAN
      United States District Judge